OPINION
{¶ 1} On November 14, 2001, the Stark County Grand Jury indicted appellant, Harry James Kutscher, Jr., on four counts of theft from an elderly person or disabled adult in violation of R.C. 2913.02(A)(3). One count was charged as a felony of the third degree and the remaining three counts were charged as felonies of the fifth degree.
 {¶ 2} A jury trial commenced on April 22, 2002. The jury found appellant guilty as charged. By judgment entry filed May 28, 2002, the trial court sentenced appellant to three years on the third degree felony count; sentences on the remaining three counts were indefinitely deferred. Appellant was subsequently granted judicial release on the three year sentence.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 4} "Appellant's Convictions For Theft From An Elderly Person Or Disabled Adult, Four Counts, Were Against The Manifest Weight And Sufficiency Of The Evidence."
 I {¶ 5} Appellant claims the jury's verdict was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 6} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 7} Appellant was convicted of four counts of theft from an elderly person or disabled adult, one a felony three and the remaining counts felony fives, in violation of R.C. 2913.02(A)(3) which states as follows:
 {¶ 8} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 9} "(3) By deception;"
 {¶ 10} The convictions stemmed from appellant's involvement in a home improvement scam involving other individuals, including his brother, Andy Kutscher, the owner of the home repair business, Secured Energy Systems. Appellant does not challenge the fact that four elderly persons were deceived into signing contracts for unnecessary repairs, but argues as a new employee of the principals, he should not be held criminally responsible for their business practices. Appellant points out the witnesses testified he was not involved in negotiating the contracts for the unnecessary repairs and he did not handle any of the funds. T. at 162, 173, 175-176, 178-179, 228, 250-251, 264-265, 282-283, 293, 319-320, 321, 325, 343, 345, 353-354, 359-360, 367-369, 376. Appellant claims his job was to make the repairs as directed therefore, his minimal involvement was not enough to sustain a conviction for aiding and abetting the thefts by deception.
 {¶ 11} We note the trial court deferred sentencing on the three felony five counts pending judicial release. The trial court only sentenced appellant on the felony three count pertaining to Thomas Palmer. Because the three felony five convictions involved deferred sentencing, they are not ripe for review. State v. George (1994),98 Ohio App.3d 371; State v. Camp (December 14, 1998), Stark App. No. 1998CA00121; City of Coshocton v. James (October 29, 1990), Coshocton App. No. 90-CA-6. As a result, we will review the felony three conviction only.
 {¶ 12} Andy Kutscher and Michael Daddario arrived at Mr. Palmer's residence and inspected his roof through the trap door in the garage. T. at 346. They informed Mr. Palmer of a serious water problem and some split beams, and showed him some wet insulation. Id. Thereafter, they negotiated with Mr. Palmer to repair his roof for the amount of $16,726.51. Id.; State's Exhibits 4B and 4C. After the work started, Mr. Palmer examined his insulation and noticed it "was bone dry, not even damp." T. at 348. Once the roof was torn off, Andy Kutscher told Mr. Palmer the roof was in bad shape and needed additional bracing. T. at 354. Mr. Palmer felt trapped by Andy Kutscher because his entire roof was exposed, so he entered into a second contract for an additional $17,100.00. T. at 355-356; State's Exhibit 4D. Days later, Mr. Palmer paid Mr. Daddario an additional $400.00 for extra repairs. T. at 359. Mr. Palmer testified the only person he knew by name who was installing the insulation was appellant. T. at 363.
 {¶ 13} John Simler, a home inspector, investigated the work done on Mr. Palmer's roof. T. at 391, 396-397. Mr. Simler found the starter strip and the first row of shingles were improperly installed, the shingles did not line up in the chimney area, there were exposed nails, the shingles did not lap properly and the gutters were not installed properly. T. at 400-404. Mr. Simler opined the "workmanship was poor." T. at 403. He inspected the attic area and found missing sub roofing and poorly done work pertaining to the vertical and horizontal supports. T. at 406-410. Mr. Simler testified the amount paid by Mr. Palmer was out of line for the general market as the fair value would have been "$10,000, plus or minus." T. at 414.
 {¶ 14} Detective Curtis Ricker of the Massillon Police Department investigated the Palmer complaint along with other complaints against Secured Energy Systems. T. at 429-430. During the course of his investigation, Detective Ricker became familiar with appellant's name. T. at 432. Detective Ricker, along with other police officers, interviewed appellant wherein he gave a taped statement. T. at 432-433; State's Exhibit 6. Appellant admitted to exaggerating the seriousness of needed repairs in order "[t]o make another sale." See, Pages 5-6 of Transcript of Taped Statement, attached to February 21, 2002 Response to Request for Discovery. Appellant was instructed by Andy Kutscher and Mr. Daddario to escalate the jobs. Id. at 9. Nothing was ever an emergency although it was represented as such. Id. at 10. Appellant was given a "finder's fee" of $100.00 for finding "something that could be done." Id. at 12. Appellant admitted to escalating ninety percent of all the jobs he was involved in. Id. at 14. Appellant admitted to working on and being paid for the Palmer job. Id. at 19.
 {¶ 15} Appellant summed up his involvement as follows:
 {¶ 16} "Um, yeah, I mean a lot of this stuff that was you know done, the way of the techniques used, I know was wrong, you know. But I'm just, you know, I'm there. I'm a worker. They're saying look if you notice something or anything that might maybe could be done, call me and let me know, you know, and some — there's been things I've done, I thought man we shouldn't be doing this, but it was like it was my job, you know." Id. at 30.
 {¶ 17} In the indictment, appellant was charged as both a principal and an accomplice. "Aiding and abetting" is defined as "[o]ne who assists another in the accomplishment of a common design or purpose." Black's Law Dictionary (6 Ed. 1990) 68.
 {¶ 18} We find sufficient evidence, if believed by the jury, to support the conviction. Appellant was clearly aware of the roofing repair scam. Taped Transcript at 9-11. He knew senior citizens were targeted and the neighborhoods were cased in advance. T. at 14-15. Appellant participated by stopping a job once a defect was noticed, escalating the problem and informing the principals. Id. at 17. Further, appellant profited from the escalated jobs. Id. at 12. He was also aware the repairs were not emergencies. Id. at 10.
 {¶ 19} Appellant argues Mr. Palmer received the negotiated repair work and therefore there was no theft. We disagree. The Palmer job cost approximately $33,000.00 while its fair market value was $10,000.00. Clearly a $20,000.00 deviation is sufficient to establish theft.
 {¶ 20} The sole assignment of error is denied.
 {¶ 21} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
Gwin, P.J. and Edwards, J. concur.